IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-1756 (CMH/IDD) |
| | ) | |
| $860,000.00 IN FUNDS SEIZED FROM CRYPTO.COM | ) | |
| ACCOUNT ASSOCIATED WITH USER ID 44994111 | ) | |
| AND EMAIL ADDRESS | ) | |
| WESTCOUNTYCONSTRUCTION@COMCAST.NET, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Default Judgment and Order of

Forfeiture, pursuant to Federal Rule of Civil Procedure 55(b)(2). Dkt. No. 10. After a representative

for the $860,000.00 in funds seized from the crypto.com account associated with user id 44994111

and email address westcountyconstruction@comcast.net (collectively "Defendant Funds") failed to

appear at the hearing on April 25, 2025, the undersigned Magistrate Judge took this matter under

advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Motion

for Default Judgment, and supporting documentation, the undersigned Magistrate Judge makes the

following findings and recommends that the Motion for Default Judgment and Order of Forfeiture be

**GRANTED**.

## I.     INTRODUCTION

Plaintiff filed its Complaint *in rem* on October 3, 2024, pursuant to 18 U.S.C. § 981(a)(1)(C),

seeking the forfeiture of all right, title, and interest in the $860,000.00 in funds seized from the

crypto.com account associated with user id 44994111 and email address westcountyconstruction@comcast.net (collectively "Defendant Funds"), involving violations of 18 U.S.C. § 1343. Dkt. No. 1. Plaintiff alleges that the property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C). *Id.* On that basis, Plaintiff filed the present Motion for Default Judgment against the Defendant Funds and requests that this Court enter an Order of Forfeiture as to the Defendant Funds. Dkt. No. 10.

### A.    Jurisdiction and Venue

For a court to render a default judgment against a party, it must have (1) subject matter jurisdiction, (2) personal jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1345, because district courts have original jurisdiction over all civil actions, suits, or proceedings commenced by the United States. Compl. ¶ 3. Likewise, pursuant to 28 U.S.C. § 1355(a), federal district courts also have original jurisdiction over *in rem* civil forfeiture actions brought under any federal statute. *Id.*

Additionally, this Court has *in rem* jurisdiction over the Defendant Funds under 28 U.S.C. § 1355(b)(1)(A) because the acts giving rise to the forfeiture took place in the Eastern District of Virginia. *Id.* ¶ 4.

Finally, venue is also proper in this District under 28 U.S.C. § 1355(b)(1)(A) because the acts giving rise to the forfeiture took place in the Eastern District of Virginia. *Id.* ¶ 5. *See also United States v. $121,675.00 in U.S. Currency*, 725 F. Supp. 3d 521, 525-27 (E.D.N.C. 2024) (finding that Section 1355 confers both venue and jurisdiction in the district where the acts giving rise to the forfeiture occurred).

2

## B.    Service of Process

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

Actions, Federal Rules of Civil Procedure ("Rule G"), governs *in rem* forfeiture actions arising from

a federal statute. Specifically, Rule G(3) that "if the defendant is not real property: (i) the clerk must

issue a warrant to arrest the property if it is in the government's possession, custody, or control; or

(ii) the court—on finding probable cause—must  issue a warrant to arrest the property if it is not in

the government's possession, custody, or control." Supp. R. G(3)(b). The warrant must be delivered

to someone who is authorized to execute it. Those authorized to execute the warrant include a United

States Marshal, a United States officer or employee, someone under contract with the United States,

or someone appointed by the court for this purpose. *See* Supp R. G(3)(c)(i).

In addition to the execution of the warrant, notice of the action must be published within a

reasonable time after filing the complaint, unless: (1) the defendant property is worth less than

$1,000 and direct notice is sent under Rule G(4)(b) to every person the government can reasonably

identify as a potential claimant; or (2) the court finds that the cost of publication exceeds the

property's value and that other means of notice would satisfy due process. Supp. R. G(4)(a)(i).

Finally, Rule G(4)(b) provides that the "government must send notice of the action and a copy of the

complaint to any person who reasonably appears to be a potential claimant on the facts known to the

government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." Supp. R.

G(4)(b).

The undersigned finds that Plaintiff has complied with all the procedural and notice

requirements necessary to bring a forfeiture *in rem* action against the Defendant Funds. Pursuant to

Rule G(4)(b), a written notice of this civil forfeiture action and a copy of the Complaint *in rem* was

sent via United States Postal Service ("USPS") to all persons believed to have an interest in the

Defendant Funds before the end of the time for filing a claim under Rule G(5)(a)(ii)(B). *See* Declaration in Supp. of Mot. for Default J. ¶ 6 [Dkt. No. 8-1] (hereinafter "Decl. in Supp.").

Pursuant to Rules G(3) (b) and (c), on October 17, 2024, a warrant of arrest *in rem* was duly executed on the Defendant Funds by the United States Marshals Service, and proof of service for an executed warrant of arrest *in rem* was filed with the Clerk of Court on November 12, 2024. Dkt. No. 4; *see also* Decl. in Supp. ¶ 4. Pursuant to Rule G(4)(a), notice of this civil forfeiture action was published on www.forfeiture.gov for a period of 30 days, beginning on January 27, 2025 (116 days after filing of the Complaint). Decl. in Supp. ¶ 5. On March 31, 2025, a notice of publication was filed with the Clerk of Court. *Id.*; *see also* Dkt. No. 7.

### C.    Grounds for Default

Plaintiff filed a Complaint *in rem* on October 3, 2024. Dkt. No. 1. Direct notice of civil forfeiture and a copy of the Complaint *in rem* were sent to the potential claimants. Decl. in Supp. ¶ 6. Also, beginning on January 27, 2025, notice of this action was published on the official government internet website www.forfeiture.gov for 30 days. *Id.* ¶ 5. According to Rules G(5)(a) and (b) and the timeline established in the government's direct notice, any claimant to the Defendant Funds was required to file a claim no later than sixty (60) days after the first day of publication on the official internet government forfeiture site (March 28, 2025). *Id.* Any claimant also was required to serve an answer within twenty-one (21) days after filing a claim. *See* Supp. R. 5(b). No extensions to these time limits were requested, and consequently none were granted by this Court.

A representative for the Defendant Funds has failed to appear, answer, or file any responsive pleading or claim to the property in this matter. On March 31, 2025, Plaintiff filed a Request for Entry of Default against the Defendant Funds with the Clerk's Office. Dkt. No. 8. The Clerk entered default against the Defendant Funds on April 1, 2025. Dkt. No. 9. On April 4, 2025, Plaintiff filed a

4

Motion for Default Judgment and Order of Forfeiture, and the Court held a hearing on the matter on April 25, 2025. Dkt. Nos. 10-12. When a representative for the Defendant Funds failed to appear at the hearing, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation.

## II.    FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiff has established the following facts.

As a preliminary matter, the United States Secret Service ("USSS") seized the Defendant Funds at issue in the present Complaint from a crypto.com account associated with an individual involved in a business email compromise ("BEC") scam.[1] Compl. ¶ 7. This individual will be referred to as SUBJECT 1 throughout this Report and Recommendation. The Defendant Funds are currently in possession of the USSS in New York. *Id.* ¶ 2.

The business email compromise scam took place as follows. On or about April 19, 2024, VICTIM 1, a resident of Reston, Virginia, which is in the Eastern District of Virginia, contacted the USSS to report that he was the victim of fraud. *Id.* ¶ 9. VICTIM 1 reported that the fraud took place on or about April 17, 2024, during the transfer of closing costs for a real estate purchase. *Id.* VICTIM 1 and his wife were purchasing property located in Denver, NC. *Id.* ¶ 10. For the transfer of closing costs for the real estate purchase, VICTIM 1 and his wife were working with a real estate law firm located in Cornelius, NC. *Id.* ¶ 9. Regarding the procedure for payment of closing costs, VICTIM 1 and his wife were in communication with a paralegal at the law firm. *Id.* ¶ 10.

---

[1] A business email compromise scam ("BEC") is a type of cybercrime, spear phishing, where the scammer uses email to impersonate someone within the victim's trusted network into sending money or divulging confidential company information. The culprit poses as a trusted figure in the victim's network and then asks for a fake bill to be paid or for sensitive data they can use in another scam be sent to accounts which are under the impersonator's control. *See* Compl. ¶ 8.

5

Unbeknownst to VICTIM 1, the law firm began receiving emails around April 2, 2024 from spoofed email accounts which were similar to VICTIM 1 and his wife's true email accounts. *Id.* In a similar fashion, VICTIM 1 and his wife also received emails around April 2, 2024 from a spoofed email address which was similar to the paralegal's true law firm email account. *Id.* The spoofed email communications between VICTIM 1 and the law firm were being intercepted by a third party. *Id.*

VICTIM 1, his wife, and the law firm were unaware that the email communications were spoofed or had otherwise been intercepted until on or about April 19, 2024. *Id.* ¶ 11. On April 19, 2024, VICTIM 1, his wife, and their realtor arrived at the law firm for a meeting they thought to be scheduled at 10:00 a.m. EST. *Id.* However, an attorney at the law firm stated they thought the meeting was at 2:00 p.m. EST. *Id.* The attorney further asked VICTIM 1 and his wife when they were going to wire the closing funds for the real estate sale. *Id.* VICTIM 1 told the attorney that he had already wired the funds to Bank of America on or about April 17, 2024, per the wiring instructions he received in an email dated April 16, 2024. *Id.* The spoofed email directed VICTIM 1 to send a wire transfer to a Bank of America Account ending in 0822 in the name of SUBJECT 1 Sole Prop DBA West County Construction ("SUBJECT BANK ACCOUNT 1"). *Id.* As a result of this exchange, VICTIM 1, his wife, and the law firm discovered that their email communications had been intercepted. *Id.*

Upon learning of the spoofed emails, VICTIM 1 immediately contacted his financial institution, Charles Schwab, to report that the closing payment was disbursed to an unintended account and recipient. *Id.* ¶ 12. As a result of the email compromise, VICTIM 1 wired approximately $966,577.29 of personal funds from his Charles Schwab account ending in 1511 to SUBJECT BANK ACCOUNT 1. *Id.* ¶ 13.

6

The subsequent movement of the wire fraud proceeds is described as follows. On or about April 16, 2024, the crypto.com account associated with user id 44994111 and email address westcountyconstruction@comcast.net ("CRYPTO ACCOUNT") had a balance of zero. Compl. ¶ 14. On or about April 17, 2024, $750,000.00 was transferred from SUBJECT BANK ACCOUNT 1 to another Bank of America Account, ending in 1355, in the name of SUBJECT 1 ("SUBJECT BANK ACCOUNT 2"). *Id.* ¶ 15. On or about the same day, $750,000.00 was wired from SUBJECT BANK ACCOUNT 2 to the CRYPTO ACCOUNT. *Id.* On or about April 18, 2024, $216,000.00 was transferred from SUBJECT BANK ACCOUNT 1 to SUBJECT BANK ACCOUNT 2. *Id.* ¶ 16. On or about the same day, $210,000.00 was wired from SUBJECT BANK ACCOUNT 2 to the CRYPTO ACCOUNT. *Id.* ¶ 16. In total, approximately $960,000.00 in fraud proceeds were sent to the CRYPTO ACCOUNT. *Id.* ¶ 17.

Also on or about April 18, 2024, crypto.com records document a transaction from the CRYPTO ACCOUNT in the amount of 1.588106 Bitcoin ("BTC"), valued at $98,276.94 in proceeds, to address: bc1qz3ms6tlc2d4lkrp6q6al28tkknyzvaflqt4y72, via transaction ID: b8c5516bd2373553b795c825247c54cbe6787afd16e97b69f5d0beb639ef4df8. *Id.* The transfer was for $100,000.00, but the transaction was charged $1,723.06 in fees. *Id.* After the Bitcoin transfer, approximately $860,000.00 remained in the CRYPTO ACCOUNT. *Id.* A subsequent trace followed $98,276.94 to Binance, a cryptocurrency exchange. *Id.* ¶ 18. Information obtained from Binance indicated the funds went to address: 1LdEvfQGAY4stVWpCo4ynMt1NUVDbY7JZG via transaction ID: 9c7d0132cebcaea7f46f3a1f098b592ca094dd2c498a80fb-d7b57ee51e48c2a0. *Id.* Binance provided "know your customer" information for the above address, which identified a Nigerian national operating in Turkey as the owner of the account. *Id.* On or about April 18, 2024,

the equivalent of $89,999.97 in cash was withdrawn from the account. *Id.* Therefore, in total, approximately $860,000.00 in proceeds remained in the CRYPTO ACCOUNT. *Id.* ¶ 17.

The movement of the Defendant Funds is summarized in Plaintiff's Exhibit 1, *see* Dkt. No. 1, which has been reproduced below.

### **Plaintiff's Exhibit 1**



On April 22, 2024, after VICTIM 1 reported fraud, USSS left phone messages for SUBJECT 1 on two phone numbers registered to West County Construction. *Id.* ¶ 20. The voice message greetings for both phone numbers revealed that the numbers were associated with "West County Construction." *Id.* On the same day, USSS conducted a telephonic interview with SUBJECT 1. *Id.* ¶ 21. SUBJECT 1 stated that he wired approximately $776,000 from SUBJECT BANK ACCOUNT 2 to the CRYPTO ACCOUNT under his email address, westcountyconstruction@comcast.net (via

Community Federal Savings Bank). *Id.* USSS advised SUBJECT 1 that it appeared he was acting as a money mule and requested that SUBJECT 1 not move the funds further. *Id.* ¶ 22. SUBJECT 1 also stated that the $996,577.29 wire transfer from VICTIM 1 was a real estate transaction set up by his "wife," "Janette Lynn Nash." *Id.* ¶ 23. SUBJECT 1 claimed that Janette Lynn Nash is a contractor for the World Health Organization in Yemen and conceded that he had only met her once. *Id.*

## III.        EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a valid claim). A defendant in default concedes the factual allegations of the complaint and is barred from contesting them on appeal. *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (explaining that default has the effect of finding all factual allegations in the complaint admitted). Default does not, however, constitute an admission of the adversary's conclusions of law, and it is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must

evaluate the Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

In particular, civil forfeiture complaints must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). At trial, the government is required to prove by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c). Accordingly, the government must state sufficient facts to support a reasonable belief that it will be able to prove forfeitability by a preponderance of the evidence. *See United States v. All Assets Listed in Attachment A*, 2015 WL 1401747 (E.D. Va. Mar. 25, 2015) (citing *United States v. 2003 Mercedes Benz CL500*, 2013 WL 5530325, at *2 n. 4 (D. Md. Oct. 3, 2013)) (stating that the government was not required to establish the forfeitability by a preponderance of the evidence to seek a default judgment; rather, the government had to state sufficient facts to support a reasonable belief that it would be able to prove forfeitability *at trial* by a preponderance of the evidence).

### A. Basis for Forfeiture

Plaintiff contends that the Defendant Funds, obtained from the CRYPTO ACCOUNT, are derived from illegal wire fraud activities, in violation of 18 U.S.C. § 1343, and that the Defendant Funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

10

### 1. Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(C)

According to Section 981(a)(1)(C), any property that "constitutes or is derived from proceeds traceable to…any offense constituting 'specified unlawful activity,' or a conspiracy to commit such offense" is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C). 18 U.S.C § 1956(c)(7)(D) defines "specified unlawful activity" as, among numerous other offenses, a violation of 18 U.S.C. § 1961(1). Section 1961(1), in turn, encompasses violations of 18 U.S.C. § 1343, relating to wire fraud. *See* 18 U.S.C. § 1961(1). Here, Plaintiff alleges that the Defendant Funds are "proceeds traceable" to the crime of wire fraud.

To obtain forfeiture, the government must establish a "substantial connection" between the property to be forfeited and the crime on which forfeiture is predicated. *See* 18 U.S.C. § 983(c)(3); *United States v. Manlapaz*, 825 Fed.Appx. 109, 115 (4th Cir. 2020); *United States v. Miller*, 911 F.3d 229, 232 (4th Cir. 2018); *United States v. One 2003 Mercedes Benz CL500*, 2013 WL 5530325 (D. Md. Oct. 3, 2013) (collecting cases). In other words, property is subject to forfeiture if it would not have been received "but for" the occurrence of the illegal activities giving rise to the forfeiture. *See United States v. Farkas*, 474 F. App'x 349, 359–360 (4th Cir. 2012) (affirming district court's judgment that proceeds would not have been received but for fraud); *United States v. Ivanchukov*, 405 F.Supp.2d 708, 712–13 (E.D.Va. 2005) (adopting a "but for" nexus test for illegal proceeds under the criminal forfeiture statute and noting the test's use in several other circuits).

Here, the Government is alleging a violation of Section 1343, which is a specified unlawful activity under Section 981(a)(1)(C). Compl. ¶ 6; *see also* 18 U.S.C §§ 1956(c)(7)(D), 1961(1). Accordingly, the Government must demonstrate a "substantial connection" between the Defendant Funds in the CRYPTO ACCOUNT and a violation of Section 1343. Section 1343 prohibits using interstate wires to effect "any scheme or artifice to defraud, or for obtaining money or property by

11

means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. To prove that a defendant committed wire fraud, the government must show that: (1) the defendant knowingly participated in a scheme to defraud, and (2) interstate wire facilities were used in furtherance of the scheme. *See Pereira v. United States*, 347 U.S. 1, 8 (1954); *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012); *United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018); *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 443 (E.D. Va. 2006).

Upon reviewing the facts, the Court finds that the Government has stated facts sufficient to support a reasonable belief that the Defendant Funds are subject to forfeiture, due to their substantial connection to wire fraud activities.

First and foremost, the fraudulent email which instructed VICTIM 1 to send closing costs to SUBJECT BANK ACCOUNT 1 caused VICTIM 1 to send the closing costs to the unintended bank account and set into action the eventual transfer of funds to CRYPTO ACCOUNT. Simply put, there is a direct connection between (1) the use of interstate wire facilities—namely, email communications—to effectuate a scheme to defraud and (2) the Defendant Funds seized from the CRYPTO ACCOUNT. Specifically, the funds from the CRYPTO ACCOUNT can clearly and directly be traced to VICTIM 1's Charles Schwab bank account. *See* Pl.'s Exh. 1. VICTIM 1 reported sending $966,577.29 to a Bank of America account ending in 0822, SUBJECT BANK ACCOUNT 1, on or about April 17, 2024. Compl. ¶¶ 11, 13. On the same day, $750,000.00 was transferred first to another Bank of America account in the name of SUBJECT 1, SUBJECT BANK ACCOUNT 2, and next to the CRYPTO ACCOUNT. *Id.* ¶ 15. On the next day, April 18, 2024, $216,000.00 was transferred from SUBJECT BANK ACCOUNT 1 to SUBJECT BANK ACCOUNT 2, and $210,000.00 was transferred from SUBJECT BANK ACCOUNT 2 to the CRYPTO ACCOUNT. *Id.* ¶ 16.

On April 16, 2024, one day before VICTIM 1's inadvertent transfer, the CRYPTO ACCOUNT had a balance of zero. *Id.* ¶ 14. By April 18, 2024, the CRYPTO ACCOUNT had a balance of approximately $960,000.000—the sum of the April 17 transfer in the amount of $750,000.00 and the April 18 transfer in the amount of $210,000.00. After a $100,000.00 transfer out of the CRYPTO ACCOUNT on April 18, 2024, *see id.* ¶ 17, a total balance of $860,000.00 remained in the CRYPTO ACCOUNT, the entirety of which was transferred to the account between April 17, 2024 and April 18, 2024 from Bank of America accounts in the name of SUBJECT 1. The movement of the funds from VICTIM 1's Charles Schwab account, as a result of a spoofed email, to bank accounts in the name of SUBJECT 1 and eventually to the CRYPTO ACCOUNT demonstrates the connection between the $860,000.00 in Defendant Funds and the wire fraud that VICTIM 1 was subject to on April 17, 2024. In fact, the Defendant Funds would not have been present in CRYPTO ACCOUNT "but for" the spoofed email messages and interception of email communications between VICTIM 1, his wife, and the law firm. *See United States v. Farkas*, 474 F. App'x 349, 359–360 (4th Cir. 2012); *United States v. Ivanchukov*, 405 F.Supp.2d 708, 712–13 (E.D. Va. 2005) (reinforcing the "but for" test for forfeiture).

Furthermore, the undersigned finds that SUBJECT 1's statements during his interview with the USSS conflict with VICTIM 1's report stating that he and his wife inadvertently transferred $996,577.29 to SUBJECT BANK ACCOUNT 1, pursuant to fraudulent instructions contained in a spoofed email. During his interview with the USSS, SUBJECT 1 reported that the $996,577.29 wire transfer received from VICTIM 1 was a real estate transaction set up by his "wife," "Janette Lynn Nash." Compl. ¶ 23. In contrast, VICTIM 1's report to the USSS made clear that the $996,577.29 wire transfer was not intended to be sent to SUBJECT BANK ACCOUNT; rather, the transfer was made pursuant to fraudulent instructions contained in a spoofed email and that the law firm

overseeing the real estate sale never directed VICTIM 1 and his wife to send the funds to SUBJECT BANK ACCOUNT 1. *Id.* ¶ 11. VICTIM 1's report and SUBJECT 1's conflicting statements further suggest that the funds ended up in CRYPTO ACCOUNT as a result of a wire fraud scheme.

Because the facts alleged by Plaintiff support a reasonable belief that the Defendant Funds have a "substantial connection" to and are "proceeds traceable" to wire fraud, pursuant to 18 U.S.C. § 1343, which constitutes "specified unlawful activity" under 18 U.S.C. § 981(a)(1)(C), the undersigned finds that forfeiture as to the Defendant Funds is proper.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends the entry of default judgment in favor of Plaintiff, United States of America, against Defendant Funds, $860,000.00 seized from the crypto.com account associated with user id 44994111 and email address westcountyconstruction@comcast.net. The undersigned further recommends that an Order of Forfeiture be entered extinguishing any and all rights and interests that anyone may have in the Defendant Funds and forfeiting the Defendant Funds to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C). Finally, the undersigned recommends that the Attorney General or a designee dispose of the Defendant Funds in accordance with law.

## V.    NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and**

14

**Recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of

record.

_____/s/_____

Ivan D. Davis
United States Magistrate Judge

September 9, 2025
Alexandria, Virginia